**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**SENTARA HOSPITALS,**
**d/b/a SENTARA VIRGINIA BEACH**
**GENERAL HOSPITAL,**

          **Plaintiff,**

**v.**                                 **Civil Action No. 2:07cv1**

**MAXIM HEALTHCARE SERVICES, INC.,**

          **Defendant.**

**ORDER AND OPINION**

Pending before the court is the defendant's Motion for Summary Judgment, filed

pursuant to Federal Rule of Civil Procedure 56.  The defendant's chief contention is that the

plaintiff is not entitled to enforce the provisions of a contract between the defendant and Virginia

Beach General Hospital.  The court held oral argument on the motion on August 2, 2007, at

which time the court took the issue under advisement.  The court, for the reasons fully set forth

herein, **DENIES** the defendant's motion.

I.  Factual Background

Much of the factual background of this case has been set out in the court's order of

March 30, 2007, denying the defendant's motion to dismiss.  The plaintiff, Sentara Hospitals, is

a non-profit healthcare provider that operates, inter alia, a hospital in Virginia Beach, Virginia.

The defendant, Maxim Healthcare Services, Inc., provided nursing personnel to several hospitals

affiliated with the plaintiff, and specifically to Virginia Beach General Hospital ("VBGH"),

which merged with the plaintiff in 2002 and is now known as Sentara Virginia Beach General

Hospital.

In 1996, VBGH, which was then under the control of Tidewater Healthcare, Inc., entered into an Extended Staffing Agreement ("the 1996 Agreement") with the defendant, which obligated the defendant to provide nursing staff to VBGH in exchange for monetary compensation. On June 5, 1998, Tidewater Healthcare, the parent company of VBGH, affiliated with Sentara Health System, thereby making Sentara Health System the parent company of VBGH. Sentara Health System changed its name to Sentara Healthcare on February 26, 1999, making Sentara Healthcare the parent company of VBGH. In 2000, VBGH filed a fictitious name certificate in order to operate as Virginia Beach General Hospital d/b/a Sentara Virginia Beach General Hospital. On April 3, 2001, the defendant entered into a new contract with Sentara Hospitals, a first-tier subsidiary of Sentara Healthcare, for staffing of nurses at several hospitals, including VBGH, thereby superceding the 1996 Agreement. In March 2002, VBGH merged with and into the plaintiff, and entered into a plan of merger with Sentara Hospitals. After the merger, the defendant continued to do business with the plaintiff and entered into additional contracts with Sentara Healthcare and its subsidiaries over the next several years.

On December 4, 2000, while VBGH was a subsidiary of Sentara Healthcare but before it had merged with the plaintiff, a patient at VBGH, William Hatchett, slipped and fell in his room at the hospital, striking his head on a wall. As result of the fall, Mr. Hatchett suffered a brain aneurysm that ultimately resulted in his death on January 10, 2001. On or about August 4, 2004, Della Hatchett, as Administratrix of the Estate of William Hatchett, filed a Motion for Judgment against the plaintiff in the Circuit Court for the City of Virginia Beach, Virginia, alleging negligence on the part of the plaintiff and its employees and agents in failing to keep the hospital

premises safe for invitees and patients.  On November 16, 2005, the Hatchett Estate and the

plaintiff entered into a settlement agreement, whereby the plaintiff, without admitting liability on

the underlying matter, settled the claim by paying to the Hatchett Estate the sum of $212,500.00.

See Order of Compromise Settlement, Exhibit 2 to Complaint.

II.  Procedural History

On November 22, 2006, in the Virginia Beach Circuit Court, the plaintiff filed the instant

suit against the defendant, seeking indemnification for the sum paid out to Hatchett.

Specifically, the complaint alleges that Nurse Sherry Byrd, who was employed by the defendant

and working at Virginia Beach General, was negligent in failing to clean up a wet floor after

having been informed of its condition, which ultimately resulted in the death of William

Hatchett.  The defendant removed the case to this court on the basis of diversity jurisdiction on

January 3, 2007, and filed a motion to dismiss for failure to state a claim for which relief can be

granted on January 10, 2007, which the court denied by order of March 30, 2007.  After the

parties engaged in discovery, the defendant filed the instant motion for summary judgment on

July 19, 2007.  The plaintiff filed a response brief on July 30, 2007, and the defendant filed a

rebuttal brief on August 1, 2007.  The court heard oral argument on the issue on August 2, 2007.

III.  Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is only appropriate when

the court, viewing the record as a whole and in the light most favorable to the non-moving party,

determines that there exist no genuine issues of material fact and that the moving party is entitled

to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v.

Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

Once a party has properly filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Celotex Corp., 477 U.S. at 322-24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by the plaintiff to rebut defendant's motion with such evidence will result in summary judgment. "[T]he plain language of Rule 56 mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Although the moving party bears the initial burden of stating the basis for its motion, that burden can be discharged if the moving party can show "an absence of evidence to support the non-moving party's case." Id. at 323, 325. After the moving party has discharged the burden, the non-moving party must then designate specific facts showing that there is a genuine issue of material fact. Id. at 324.

To enter summary judgment, a court does not need to determine that there are no factual issues in dispute. To find against the moving party, however, the court must find both that the facts in dispute are material and that the disputed issues are genuine. A factual dispute is deemed to be material if it is dispositive of the claim. See Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). Similarly, a factual dispute is considered genuine if it is based on more than speculation or inference. Celotex Corp., 477 U.S. at 327; Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 164 (4th Cir. 1997) (en banc), overruled on other grounds by Bragdon v. Abbott, 524 U.S. 624 (1998).

While it is the movant's burden to show the absence of a genuine issue of material fact,

Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the

non-movant's burden to establish the existence of such an issue.  See Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986).  "The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  To survive

summary judgment, the non-moving party must present evidence that is "significantly

probative."  Celotex Corp., 477 U.S. at 327.

IV.  Analysis

A.  Transfer of Rights via the 2002 Plan of Merger

        The central issue that confronts the court on the defendant's motion for summary

judgment is whether the merger between the plaintiff and VBGH involved a transfer of rights

from VBGH to the plaintiff such that the plaintiff would now be entitled to enforce the

indemnification provision in the 1996 Agreement between VBGH and the defendant.[1]  As the

plaintiff has argued, the Plan of Merger that it entered into with VBGH in 2002, in compliance

with the requirement of Va. Code Ann. § 13.1-894 (1985), effected such a transfer of rights.  In

contrast, the defendant argues that Va. Code Ann. § 13.1-897 (1985), which specifies what

occurs at the merger between two non-stock Virginia corporations, made no provision for the

_____

        [1]Although the plaintiff, in its response brief, claimed that several material facts were in
dispute, the defendant has indicated that these factual claims are either not disputed or not
material to these proceedings.  Indeed, the issue that has engaged the parties in the summary
judgment proceedings is clearly a legal one regarding the operation of the 2002 Plan of Merger
and its possible conflict with other provisions of the Virginia Nonstock Corporation Act.  Of
course, the court anticipates that the parties will dispute the underlying facts surrounding the
death of Mr. Hatchett, but the legal issue before the court must be resolved before those factual
differences may be addressed.

transfer of contract rights before its amendment in 2007.  Therefore, the defendant claims that to

the extent the 2002 Plan of Merger is in contravention with §13.1-897, the specific statutory

language should trump the language that the parties used in the Plan.

At oral argument, and in the filings in support of the defendant's summary judgment

motion, defense counsel repeatedly emphasized his belief that the Plan of Merger contradicted

the provisions of § 13.1-897, and therefore the two could not be read in concert with each other.

The solution to this contradiction, according to defense counsel, is to disregard the portions of

the Plan of Merger which conflict with § 13.1-897, in particular the statement in the Plan of

Merger that "the Surviving Corporation [the plaintiff, Sentara Hospitals] shall succeed to and

possess all of the properties, rights, privileges, powers, franchises and immunities of a public and

private nature of the Merging Corporation [VBGH]."  Therefore, the defendant argues that the

right that the plaintiff claims it possesses to force the defendant to indemnify it in this case did

not survive the 2002 merger between the plaintiff and VBGH.

To emphasize its interpretation of the statutes at issue in this case, the defendant points to

the policy arguments that have long been raised in favor of restrictions on assignments of

contracts.  Specifically, the defendant contends that it is entitled to choose the parties with whom

it does business, and that permitting its contractual partners to transfer the rights under a contract

to a third party by virtue of a merger would be to undercut that right and expose the defendant to

the risk that it will be bound by contract to a party with which it never intended to have a

relationship.  The defendant argues that this could expose it to a significantly increased risk, as

the surviving corporation to a merger might operate in an entirely different manner than the

merging corporation.  Therefore, as a policy matter, the defendant argues that under the pre-2007

version of the Virginia Nonstock Corporation Act, contractual rights were not permitted to be transferred at the time of a merger between two nonstock corporations, because it would undermine the idea of freedom of contract.

The defendant's policy argument, however, is undercut by the simple fact that the 2007 amendment to § 13.1-897 has added language to that statute that all parties acknowledge provides for the transfer of contract rights during a merger simply by operation of law.  Indeed, the statute now includes the provision that "[p]roperty owned by and, except to the extent that assignment would violate a contractual prohibition on assignment by operation of law, every contract right possessed by each domestic or foreign corporation or eligible entity that merges into the survivor is vested in the survivor without reversion or impairment" at the time of a merger.  Va. Code Ann. § 13.1-897(A)(3) (2007).  Clearly, the Virginia General Assembly saw fit to explicitly provide in § 13.1-897 that contract rights would survive a corporate merger by operation of law.  It is reasonable to conclude that the General Assembly considered the detriment that such a provision might have on freedom of contract, but ultimately decided that countervailing benefits more than sufficed to tip the balance in favor of the language that was ultimately adopted in the amendment.  Therefore, the defendant's argument in favor of freedom of contract is diminished in light of the amended § 13.1-897.

The defendant's policy argument fails for another, even more stark reason: the 1996 Agreement had already been superceded at the time of the merger, and therefore the defendant was not being forced to contract with a party that it knew nothing about.  Although much of the defendant's rhetoric has focused on the claim that it was not a party to the merger, and therefore should not be subjected to the effects of an agreement between the plaintiff and VBGH, that

argument assumes, a priori, that the result of the merger would be to bind the defendant to offer

performance of a contract to a party to which it did not wish to be bound.  In reality, however,

the defendant entered into an agreement with the plaintiff in 2001 that by its terms superceded

the 1996 Agreement.  Thus, if the merger did indeed transfer the right to enforce the contract

from VBGH to the plaintiff, that right did not include the right to require the defendant to

provide nursing personnel for the plaintiff, because the plaintiff already had that right by virtue

of the 2001 contract.  In actuality, the only right in question in this case that might have been

transferred is the right to enforce the indemnification clause of the 1996 Agreement, which the

parties seem to agree required the defendant to indemnify VBGH for any negligence of the

defendant's employees.  Therefore, to speak of this transfer of rights from VBGH to the plaintiff

as one that fundamentally altered the defendant's right or obligations is to disguise the fact that

the only obligation that the plaintiff is seeking to enforce is the one that the defendant already

owed to VBGH.[2]  Indeed, the right in question is the right to payment of money, and the merger

---

[2]Indeed, the kind of "right" that the plaintiff is attempting to enforce by the filing of this lawsuit is, in essence, the opposite of a liability.  It should be noted that even the pre-2007 version of § 13.1-897 provided explicitly that the liabilities of the merging corporation would pass along to the surviving corporation, and it appears this provision is well-founded, or else a corporation could escape its debts simply by merging into another corporation.  But the policy arguments of the defendant in this case are further undermined when one considers what might occur were the situation reversed and the defendant attempting to collect from the plaintiff under the indemnification agreement.  Had some negligence on the part of an employee of the plaintiff resulted in the defendant being the target of a wrongful death lawsuit which it settled, the defendant might be reasonably expected to sue the plaintiff for indemnification, as the 1996 Agreement also required that VBGH indemnify the defendant for the negligence of VBGH's employees.  If the defendant had sued the plaintiff in an effort to recover under that provision, the defendant would no doubt have argued that VBGH's liability had survived the merger, and therefore that it was proper to seek indemnification from the plaintiff, even though the plaintiff was not a party to the 1996 Agreement.  The defendant almost certainly would not have felt constrained by the fact that it was attempting to enforce a contract against an entity that was not originally a party to the contract, because § 13.1-897 would appear to clearly give the defendant

did not change the defendant's risk vis-à-vis that right, because the accident that gave rise to the

claim for money had already occurred.  The only thing that was changed by the merger, then,

was the party to whom the defendant might owe that money.

The plaintiff, meanwhile, argues that because the statutes are in pari materia, the court

should read both § 13.1-894 and § 13.1-897 so as to give effect to both provisions as much as

possible.  Section 13.1-894 (1985) provided that "[o]ne or more corporations may merge into

another corporation if the articles of incorporation of each of them could lawfully contain all the

corporate powers and purposes of all of them. The board of directors of each corporation shall

adopt . . . a plan of merger."  Further the statute indicated that the plan of merger shall contain

"[t]he terms and conditions of the merger" and may contain "[o]ther provisions relating to the

merger."  Va. Code Ann. § 13.1-894(B)(2) & (C)(2).  Therefore, the plaintiff claims that the

provision in the Plan of Merger that purports to transfer all of VBGH's "rights" to the plaintiff is

grounded in the authority of § 13.1-894, in that it is a "term[] [or] condition[] of the merger" and

in any event is a "provision[] relating to the merger."  Because the vesting of contract rights was

not something that was prohibited by the pre-2007 version of § 13.1-897, the plaintiff argues that

the Plan of Merger adopted in 2002 is not at all contradicted by the requirements of § 13.1-897.

The plaintiff argues that § 13.1-897 provided a list of certain things that occur during a merger,

but that it is a nonexhaustive list and that the parties to a merger were free to add things by

providing for them in a plan of merger that comports with § 13.1-894.  Thus, an important

---

that right.  Thus, if the provisions § 13.1-897 can be supplemented by provisions in a properly
adopted plan of merger, there would appear to be no bar to the plaintiff enforcing the right that
VBGH once possessed.  To allow otherwise would be to permit a potentially liable defendant to
escape its obligation to indemnify a plaintiff simply because it had the fortuity to contract with a
party that then underwent a corporate merger.  The defendant should not receive such a windfall.

distinction is made between the notion that the Plan of Merger actually contradicts the provisions

of § 13.1-897 and the idea that it merely supplements § 13.1-897's requirements.

This issue appears to be one of first impression for courts applying Virginia law, and

analogy to the law of other states is not very helpful when the issue presented is squarely one of

statutory interpretation.  However, as a policy matter, it would make sense that § 13.1-897 is

simply a baseline provision that can be supplemented with terms in a plan of merger adopted

pursuant to § 13.1-894.  Of course those supplemental terms must also be in accordance with

other controlling law, but based on the 2007 amendments to § 13.1-897, it is clear that the

General Assembly now intends that contract rights should pass as a matter of law, with an

exception for those contracts that prohibit the assignment of contracts as a matter of law.  It is

thus reasonable to infer that parties operating under the pre-2007 version of § 13.1-897 could

also provide for the survival of contract rights after a merger, but that they would have to do so

in the plan of merger.

Therefore, the court finds that the right to enforce the indemnification provision of the

1996 Agreement passed from VBGH to the plaintiff by virtue of the 2002 Plan of Merger

between the two corporations.  Although the pre-2007 version of § 13.1-897 did not explicitly

provide that contract rights would survive a merger, parties were free to provide for such transfer

of contract rights in the plan of merger required by § 13.1-894.  The 2002 Plan of Merger

included such a provision, and that provision is not in conflict with § 13.1-897.  The 2007

amendment to § 13.1-897 brought a change in the law insofar as merging parties no longer need

to include such a provision in a plan of merger in order for contract rights to pass to the

surviving corporation.  Therefore, although the 2007 amendment did enact a substantive change

in the law, it also clarified and made explicit that which had theretofore been implicit: that it was

permissible for parties to a merger to agree that contract rights would pass by the merger.  The

Plan of Merger between VBGH and the plaintiff provided that contract rights would pass, that

provision was not in contravention of any portion of § 13.1-897, and therefore the legal effect of

that provision was to pass VBGH's contract rights–including the right to enforce the 1996

Agreement against the defendant–to the plaintiff at the time of the merger in 2002.  This

interpretation gives meaning to both § 13.1-894 and § 13.1-897, which are part of the same

legislative act, the Virginia Nonstock Corporation Act, and therefore should be read in pari

materia.  See, e.g., Prillaman v. Commonwealth, 199 Va. 401, 405 (1957).  To hold otherwise

would be to make the provisions of § 13.1-894 subservient to those of § 13.1-897, creating an

impermissible result.  See Lucy v. County of Albemarle, 258 Va. 118, 129-30 (1999) (noting that

the court's sole object in statutory interpretation is "to reconcile, if possible, any discordant

feature which may exist, and make the body of the laws harmonious and just in their operation").

B.  Transfer of the Right to Indemnification

At oral argument, defense counsel suggested that even if the Plan of Merger was valid

insofar as it did not directly contradict § 13.1-897, the provision in question in this case, which

provided that the plaintiff would accede to all of the rights of VBGH, could not possibly serve to

transfer the right to enforce the 1996 Agreement, because at the time of the merger, the 1996

Agreement was no longer in force.  Thus, claims the defendant, the plaintiff has no "rights"

under the 1996 Agreement that it could enforce.  This claim, however, is somewhat undercut by

the counterfactual conditional discussed supra at n. 2.  That a right to seek indemnification might

somehow be less durable than the concomitant liability and obligation to indemnify is difficult to

11

fathom.  Further, although the plaintiff did not have a fully vested right to indemnity unless and

until it suffered some sort of loss as a result of the negligence of the defendant or its employees,

at the moment that Mr. Hatchett died in January of 2001, the right of VBGH to seek

indemnification became much more concrete, although it was still contingent on Mr. Hatchett's

estate obtaining a judgment or settlement against VBGH.  Therefore, when VBGH merged into

the plaintiff in 2002, the contingent right to indemnification from the defendant that VBGH

possessed as a result of the 1996 Agreement was transferred to the plaintiff as a result of the Plan

of Merger.

Therefore, it is clear that the plaintiff is entitled to enforce the 1996 Agreement's

indemnification clause against the defendant in this case.  To allow otherwise would be to permit

the defendant to avoid the kind of financial liability that the defendant and VBGH had clearly

contemplated by executing the 1996 Agreement with the indemnification clause contained

therein.  While the defendant clearly may still challenge the underlying claim of negligence and

the plaintiff's settlement with the Hatchett Estate, the court is convinced that the right to enforce

the indemnification provision of the 1996 provision lawfully passed from VBGH to the plaintiff

at their 2002 merger, and therefore that summary judgment in favor of the defendant is not an

appropriate resolution of this case.

V.  Conclusion

Because the plaintiff is entitled to enforce the indemnification provision of the 1996

Agreement, the defendant has failed to demonstrate that it is entitled to judgment as a matter of

law.  Therefore, the defendant's motion for summary judgment is **DENIED**.  As the court

instructed at oral argument, the defendant is **ORDERED** to file, within ten days of the date of

this order, a brief in response to the plaintiff's brief of August 1, 2007 addressing the issue of the

proper jury instructions as to what must be proven by the plaintiff.

       The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for all

parties.

       It is so **ORDERED**.

            /s/

Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

August 17, 2007
Norfolk, Virginia